

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

*Connecticut Financial Center*  (203)821-3700
*157 Church Street, 25th Floor*  *Fax (203) 773-5376*
*New Haven, Connecticut 06510*  *www.justice.gov/usao/ct*

**October 5, 2023**

Kevin T. Duffy, Jr.
Duffy & Staub LLC
66 Field Point Road, Suite 100
Greenwich, CT 06830

3:23CR 171 RNC

Alex Lipman
Lipman Law PLLC
147 West 25th Street, 12th Floor
New York, NY 10001

     Re:    United States v. Jonathan Vincent Glenn
               Case No. 3:23cr

Dear Attorneys Duffy and Lipman:

This letter confirms the plea agreement between your client, Jonathan Vincent Glenn (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in this criminal matter.

### THE PLEA AND OFFENSE

In consideration for the benefits offered under this agreement, the defendant agrees to waive his right to be indicted and to plead guilty to a one-count information charging a violation of 18 U.S.C. § 1348(1) (Securities Fraud).

The defendant understands that, to be guilty of this offense, the following essential elements must be satisfied:

1. The defendant executed a scheme or artifice to defraud any person;

2. The scheme or artifice to defraud was in connection with any security of an issuer with a class of securities registered under the Securities Exchange Act [15 U.S.C. § 78*l*] or that is required to file reports under the Securities Exchange Act [15 U.S.C. § 78o(d)]; and

*Kevin T. Duffy, Jr., Esq.*
*Alex Lipman, Esq.*
*Page 2*

    3.    The defendant did so knowingly and with intent to defraud.

## THE PENALTIES

### Imprisonment

This offense carries a maximum penalty of 25 years of imprisonment.

### Supervised Release

In addition, the Court may impose a term of supervised release of not more than five years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to three years per revocation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

### Fine

This offense carries a maximum fine of $250,000. The defendant also is subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

### Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

### Restitution

In addition to the other penalties provided by law, the Court also must order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

### Interest, penalties and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may

*Kevin T. Duffy, Jr., Esq.*
*Alex Lipman, Esq.*
*Page 3*

be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (i) and § 3612(g).

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guidelines determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guidelines application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) disclosing to the United States Attorney's Office and the United States Probation Office a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or takes a position at sentencing,

*Kevin T. Duffy, Jr., Esq.*
*Alex Lipman, Esq.*
*Page 4*

or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guidelines Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The defendant's base offense level under U.S.S.G. § 2B1.1(a) is 7. That level is increased by 16 under U.S.S.G. § 2B1.1(b)(1)(I) because the loss is more than $1,500,000 but less than $3,500,000. Two levels are added under U.S.S.G. § 2B1.1(b)(2) because the offense involved 10 or more victims. Four levels are added under U.S.S.G. § 2B1.1(b)(20) because the offense involved a violation of securities law and, at the time of the offense, the defendant was an investment adviser. Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 26.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level of 26, assuming placement in Criminal History Category I, would result in a Guidelines range of 63 to 78 months of imprisonment (sentencing table) and a fine range of $25,000 to $250,000 (U.S.S.G. § 5E1.2(c)(3)). If the sentencing should occur after the proposed amendment to U.S.S.G. § 4C1.1 (Adjustment for Zero-Point Offenders) takes effect, the defendant would be eligible to receive a two-level reduction in his offense level, resulting in a total offense level of 24. A total offense level of 24, assuming placement in Criminal History Category I, would result in a Guidelines range of 51 to 63 months of imprisonment (sentencing table) and a fine range of $20,000 to $200,000 (U.S.S.G. § 5E1.2(c)).

The defendant also is subject to a supervised release term of two years to five years. U.S.S.G. § 5D1.2.

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

### Information to the Court

The parties reserve the right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

The defendant acknowledges and agrees that he is knowingly, intelligently, and voluntarily waiving the following rights:

### Waiver of Right to Indictment

The defendant understands that he has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that he committed the offense set forth in the information before an indictment could be returned. The defendant acknowledges that he is waiving his right to be indicted.

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right

*Kevin T. Duffy, Jr., Esq.*
*Alex Lipman, Esq.*
*Page 6*

to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following the defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

### Waiver of Right to Challenge Conviction

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims the defendant might raise, the defendant waives the right to challenge the conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Appeal Rights Regarding Sentencing

The parties reserve their respective rights to appeal and to oppose each other's appeal of the sentence imposed as permitted by 18 U.S.C. § 3742.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because the defendant is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and the defendant (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding

*Kevin T. Duffy, Jr., Esq.*
*Alex Lipman, Esq.*
*Page 7*

of the nature of the offense to which the defendant is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which the defendant has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and, in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which the defendant is licensed, or with which the defendant does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of the defendant's participation in securities fraud, which forms the basis of the Information in this case.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw the guilty plea.

*Kevin T. Duffy, Jr., Esq.*
*Alex Lipman, Esq.*
*Page 8*

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY


HEATHER CHERRY
ASSISTANT UNITED STATES ATTORNEY

The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

_____        __10/5/23_____
JONATHAN VINCENT GLENN                 Date
The Defendant

I have thoroughly read, reviewed, and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

_____        __10/5/23_____
KEVIN T. DUFFY, JR., ESQ.              Date
ALEX LIPMAN, ESQ.
Attorneys for the Defendant

*Kevin T. Duffy, Jr., Esq.*
*Alex Lipman, Esq.*
*Page 9*

## STIPULATION OF OFFENSE CONDUCT AND RELEVANT CONDUCT

The defendant and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to plead guilty to the Information.

At all times relevant to this stipulation:

1. Jonathan Vincent Glenn ("**Glenn**") owned Glenn Capital LLC, also known as GlennCap LLC, an investment adviser firm headquartered in Greenwich, Connecticut. **Glenn** was an investment advisor. Through Glenn Capital, **Glenn** provided clients portfolio management services including asset selection and asset allocation.

2. **Glenn** managed all of Glenn Capital's advisory clients' accounts on a discretionary basis, meaning that, pursuant to an investment advisory agreement, **Glenn** was authorized to make trading decisions on each client's behalf without seeking approval for each trade.

3. **Glenn** could place trades on behalf of advisory clients, himself, or family members in one of two ways: (i) he could trade directly in the relevant individual account; or (ii) he could place block trades in Glenn Capital's omnibus account and allocate the block trades among the relevant individual accounts. Glenn Capital's Code of Ethics required **Glenn** to determine and document specific allocation of each block trade prior to the execution and to allocate block trades to individual accounts at an average price.

4. **Glenn's** clients were informed that that in order to meet his fiduciary obligations, **Glenn** avoided investment or trading practices that systematically advantaged or disadvantaged certain client portfolios and sought fair and equitable allocation of investment opportunities among **Glenn's** clients to avoid favoring one client over another. **Glenn's** clients were also informed that to the extent that **Glenn** engaged in trading on his own behalf, he would not engage in trading that operates to the client's disadvantage.

5. However, beginning in at least 2020 and continuing through March 2022, **Glenn** conducted a fraudulent "cherry-picking" scheme in which he retroactively allocated profitable trades to favored-client, family, firm, and personal accounts, and unprofitable trades to other non-favored-client accounts.

6. To carry out his cherry-picking scheme, **Glenn** used an omnibus account to execute block trades on behalf of multiple accounts. Notwithstanding the requirements set forth in the Code of Ethics, **Glenn** did not determine the allocation of the block trades until after they were executed, when **Glenn** knew if the trades were profitable in the hours following the execution. When a block purchase of an equity security increased in value in the hours after the purchase, **Glenn** generally realized the profits by selling the security. **Glenn** then allocated those profits to favored-client, family, and personal accounts. When a block purchase of an equity security decreased in value, **Glenn** generally allocated those block purchases to the non-favored-client accounts. **Glenn**

*Kevin T. Duffy, Jr., Esq.*
*Alex Lipman, Esq.*
*Page 10*

knew that this scheme unfairly deprived the non-favored-client accounts of realized first-day gains while saddling them with unrealized first-day losses. For example,

   a. On or about May 6, 2021, at approximately 9:37 a.m., **Glenn** purchased 10,000 shares of Playboy Group, Inc. ("PLBY") in the omnibus account at an average price of $53.869 per share. PLBY is a publicly traded company that trades on the NASDAQ stock exchange, a national securities exchange. At approximately 1:30 p.m., the price of PLBY fell to approximately $46 per share; **Glenn** purchased an additional 5,000 shares in the omnibus account at an average price of $46.10 per share.

   b. On that same day, at approximately 2:00 p.m., the price of PLBY rose above $48 per share. **Glenn** sold 5,000 shares of PLBY from the omnibus account at an average price of $48.764 per share. He then allocated the purchase of the 5,000 shares of PLBY at $46.10 per share and the sale of 5,000 shares of PLBY at $48.764 per share to Glenn Capital's sundry account, an account for the benefit of Glenn Capital and **Glenn**, and **Glenn's** wife's account, locking in a profit of $13,320.

   c. For the rest of the day, PLBY never rose above $49 per share. Later that evening, **Glenn** allocated the remaining 10,000 shares in the omnibus account to certain non-favored-client accounts at an average price of $53.868 per share, not the average price paid for the 15,000 PLBY shares purchased in the omnibus account that day. At the time of this allocation, the total unrealized first-day loss for the non-favored-client accounts was approximately $50,000.

7. At no time did **Glenn** inform his clients that he was "cherry-picking." To the contrary, **Glenn** gave the materially false impression that he allocated trades fairly and according to a pre-determined allocation methodology.

8. In total, there were more than 45 victim clients, collectively losing more than $2.7 million.

*Kevin T. Duffy, Jr., Esq.*
*Alex Lipman, Esq.*
*Page 11*

      This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

_____
JONATHAN VINCENT GLENN
The Defendant

_____
HEATHER CHERRY
ASSISTANT UNITED STATES ATTORNEY

_____
KEVIN T. DUFFY, JR., ESQ.
ALEX LIPMAN, ESQ.
Attorneys for the Defendant

*Kevin T. Duffy, Jr., Esq.*
*Alex Lipman, Esq.*
*Page 12*

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A as follows:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

    A. Return the property to the owner of the property or someone designated by the owner; or

    B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

    The greater of -
    (I) the value of the property on the date of the damage, loss, or destruction; or

    (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

    A. Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

    B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

    C. Reimburse the victim for income lost by such victim as a result of such offense.

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services.

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant. In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution also may result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3613A, 3614. The Court also may order that the defendant give notice to any victim(s) of the offense under 18 U.S.C. § 3555.